UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KATHY PIERRE,

                            Plaintiff.

         v.                                          05-cv-332

COUNTY OF BROOME, DAVID HARDER,
BROOME COUNTY SHERIFF, In his Individual
and Official Capacity, CORRECTIONAL MEDICAL
SERVICES, INC., MAHMOUD BUTT, M.D., and
JOHN and JANE DOES, Correctional Officers and
Medical Personnel,

                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

         Plaintiff commenced this action against Defendants pursuant to 42 U.S.C. § 1983

alleging various civil rights violations.  Plaintiff alleges that she did not receive adequate

medical attention while she was an inmate at the Broome County Correctional Facility.

Plaintiff, an African-American woman who is suffering from AIDS, charges that she did not

receive necessary, life-sustaining medication, even after repeated requests to the prison's

medical staff.  Currently before the court are Defendants' motions for summary judgment

pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Complaint in its entirety.

**I.      FACTS**

         Plaintiff was incarcerated at the Broome County Correctional Facility on October

16, 2004.  She is currently incarcerated at the Beacon Correctional Facility.  Hearing

Transcript ("HT") at 7[1].  Plaintiff has AIDS.  Before entering the facility, Plaintiff was prescribed a variety of prescription drugs, known as the "AIDS Cocktail."  The composition of the cocktail changed over time.  Plaintiff also was on medication for high blood pressure and asthma.  HT at 8.  Plaintiff testified that upon her arrival at the facility and thereafter, she was not given the proper AIDS medication.  HT at 8.  On October 20, 2004, she spoke to a doctor at the prison, Dr. Butt, and explained her condition, which medications she was taking, and which pharmacies had previously filled her prescriptions.  HT at 9.  Plaintiff spoke to her attorney about the situation and signed up for sick call, where she spoke with a nurse.  HT at 9.  When Plaintiff complained to the nurse about not receiving medication, the nurse said that it was not their fault Plaintiff had AIDS and there was nothing she [the nurse] could do about it.  HT at 14.

Beginning in October 2004, the staff at the prison requested Plaintiff's medical and prescription records from her doctor and several pharmacies that had previously filled prescriptions for Plaintiff.  These requests were not immediately fulfilled.  The prison staff did not receive the necessary records until January 2005.  Defendants claim that Plaintiff did not exhibit any symptoms of the illness during this time.  In December 2004, a blood test revealed that Plaintiff's T-cell count had dropped.  At this time, prison medical staff gave her medication based on what little information they had from the doctor and pharmacies.

Plaintiff testified that she first tried to file a written grievance concerning the medical care and medication in approximately the middle of November 2004.  She asked a unit officer if she could speak to the grievance officer, explaining that she was not receiving

---

[1]The court held an evidentiary hearing on October 25, 2006 concerning the issue of whether Plaintiff had exhausted administrative remedies.

proper medication.  Plaintiff testified that she spoke with William Kramer, the grievance sergeant, on three separate occasions.

Plaintiff testified that she first spoke to Kramer regarding a grievance in November 2004.  Plaintiff testified that at this time, Kramer told her that there was no need to file a grievance because the prison administration had been made aware of the situation by Plaintiff's criminal attorney.  HT at 50.  However, Plaintiff also testified that Kramer gave her a piece of paper so that she could explain her complaints.   HT at 11.  Plaintiff wrote on that paper that she was not receiving necessary medication.  HR at 13.  She handed the grievance back to Kramer, who told her he would get back to her.  Plaintiff never received a response.

Plaintiff's second conversation with Kramer took place in December 2004.  HT at 50.  Plaintiff testified that she again complained about not receiving any medication.  She also complained about being ridiculed by staff and other inmates.  It appears that no action was taken as a result of this conversation.

Plaintiff's third conversation with Kramer took place in January 2005 when she complained about her work assignments being in the morning.  On this issue, Plaintiff claims that she attempted to comply with the grievance process by first complaining to her supervisor, a woman named Marie.  Plaintiff explained that she often felt very weak in the morning and would rather be assigned to afternoon work.  Plaintiff claims that Marie told her she would be sent to the segregation unit if she did not do her assignments in the morning. HT at 52.  When Plaintiff spoke to the grievance officer about her work assignment, he told her if the Lieutenant ordered her to work in the mornings, then there was nothing anybody could do about it.  HT at 51.

When questioned by defense counsel, Plaintiff conceded that she did not actually sign a paper as a result of any conversation with the grievance officer.  HT at 18.  Instead, according to a July 13, 2006 deposition, she told him that she was not receiving adequate medical care and he wrote her complaint down in his "blue pad".  HT at 18.  Plaintiff explained that the grievance officer said he would get back to her, but never did.

In Plaintiff's responses to Defendant's interrogatories, there is no mention of a written grievance being filed.  Instead, it simply says that various attorneys and AIDS advocates voiced their concerns about Plaintiff's well-being to the facility and the sheriff's office.  HT at 22.  Plaintiff testified that she did file a written grievance and that the discovery documents were incorrect and she mistakenly signed the verification of these documents. HT at 22.

The defense solicited testimony from the grievance officer, Kramer, who testified that Plaintiff did not file any written grievance.  HT at 31.  When questioned by Plaintiff's counsel, Kramer explained that he was familiar with the Plaintiff and had spoken with her before.  However, he only remembered her complaining to him about being assigned work in the mornings and wanted to switch to afternoon detail.  Although aware that Plaintiff had a complaint, Kramer testified that she did not specifically say she wanted to file a written grievance, even though he was the person with which to file a grievance.  Instead, he advised her to speak with the doctor about the work assignment.  HT at 38.

## II.        STANDARD OF REVIEW

Summary judgment will be granted when there is no genuine material issue of fact and the moving party is entitled to judgment as a mater of law.  Fed .R. Civ .P. 56(c).  The court must consider the evidence in the light most favorable to the non-moving party.

Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999).  A fact is considered material if it "might affect the outcome of the suit."  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  A material fact is genuine if the "evidence is such that a reasonable jury could return a verdict for the non-moving party."  Id.  The court cannot grant summary judgment if "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party."  Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000).  There must be evidence provided by the non-moving party to support its claims.  The burden of demonstrating there is no genuine issue of material fact is on the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party meets its burden, the burden then shifts to the non-moving party, who must show that there is a genuine issue of material fact requiring a trial.  Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-586 (1986).

**III.    DISCUSSION**

> **a.        Exhaustion of Administrative Remedies**

Defendants move to dismiss on the ground that Plaintiff failed to exhaust her administrative remedies.  The Prison Litigation Reform Act ("PRLA") provides that "[no] action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e.  The Supreme Court held that the PRLA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002). .

The PLRA is unambiguous with regard to a prisoner's obligation to exhaust all

administrative remedies before filing suit under 42 U.S.C. § 1983.  This requirement applies to all claims relating to prison conditions.  The PLRA, however, only requires exhaustion of the administrative remedies that are available to a prisoner.  Accordingly, this Court must conduct a three-part inquiry to determine whether administrative remedies were exhausted for the purposes of the PLRA.  The Court must determine, "whether administrative remedies were in fact 'available' to the prisoner . . . , whether defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, . . .  or whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements."  Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004).

Second Circuit court cases have determined that there may be special circumstances that excuse a prisoner's failure to exhaust administrative remedies.  Special circumstances may exist such that the "prisoner's failure to comply with administrative procedural requirements may have been justified." Giano v. Goord, 380 F.3d 670, 676 (2d Cir. 2004).  "[T]he behavior of defendants may render administrative remedies unavailable." Hemphill, 380 F.3d at 686.

In Giano, the plaintiff relied on an ambiguous DOCS regulation and reasonably concluded that the DOCS regulations meant "that his only administrative recourse was to appeal his disciplinary conviction." Giano, 380 F.3d at 676.  Because the court found this conclusion to be reasonable based on the ambiguity of the regulation, it was deemed a special circumstance that could justify the plaintiff's failure to exhaust all available remedies.  In Ziemba v. Wezner, 366 F.3d 161 (2d Cir. 2004), the plaintiff could not utilize the internal prison grievance process because he had been threatened and physically abused by the very people he was to complain to.  Accordingly, plaintiff's failure to exhaust

was found to be excusable.  In <u>Hemphill,</u> 380 F.3d 680 (2d Cir. 2004), Plaintiff alleged that

Defendants threatened to bring criminal action and dole out harsher punishment if the

plaintiff pursued his claims.  These threats were found to have rendered the grievance

process unavailable as a practical matter.

The evidence before the Court is that Defendants do have a grievance process in

place.  According to the testimony of Kramer at the evidentiary hearing, the grievance

process at the facility begins when an inmate complains about their problem to the housing

unit officer assigned to the inmate's pod.  If the issue is not resolved at that level, the inmate

then explains the problem to the grievance officer.  HT at 32.  The grievance officer is

supposed to give the inmate a formal grievance form to fill out.  The grievance officer then

investigates the complaint.  If the matter still is not resolved, the inmate can write a letter

directly to the administrator.  Plaintiff acknowledges that there was a grievance process in

place.

Notwithstanding the existence of a grievance procedure, Plaintiff claims that the

procedures were not available to her.  Plaintiff testified that she attempted to file a grievance

on several occasions.  Plaintiff claims that she spoke to the grievance officer, presumably

Kramer, on several instances, but never received a response.  Plaintiff similarly did not

receive a response from the written grievance form she claims to have filled out.  Plaintiff

testified that when she complained to her housing officer, Marie, she was told that she would

be sent to segregation if she did not perform her work in the mornings.  Further, Plaintiff

initially received approval from Dr. Butt to work in the afternoons, but was later told that the

Lieutenant had overruled that approval and she would be sent to the medical unit if she did

not complete her work assignments in the mornings.  Moreover, Plaintiff did speak with the

grievance officer, but he failed to provide Plaintiff with the grievance form or otherwise follow up with her grievance.  Plaintiff also testified that she tried to file a grievance at least one other time in regard to her being too sick to carry out a work assignment.  When she did not receive any response, Plaintiff then chose to pursue the matter through other means, such as soliciting the guidance of an AIDS advocate, her criminal defense attorney, and later, a civil attorney.

There is no evidence that any of Plaintiff's claims, formal or informal, were investigated by the grievance officer or any other officer at the facility.  There similarly is insufficient evidence that Kramer provided Plaintiff with the necessary grievance forms, as he was required to do, or otherwise acted upon Plaintiff's complaints.  Considering the sensitive nature of Plaintiff's complaints, her wish to maintain her privacy concerning her medical conditions, the fear of retaliation and harassment, and, most significantly, the lack of any response to her complaints, it was reasonable for Plaintiff to believe that it would have been futile to continue to pursue Defendants' grievance procedure.  For these reasons, Plaintiff's failure to comply with the exhaustion requirements is justified and Defendants' motion to dismiss for failure to exhaust administrative remedies is denied.

**b.**      **Claim of deliberate indifference to a serious medical need**

Plaintiff claims that her Eighth Amendment rights were violated because prison officials showed a deliberate indifference to her medical needs by refusing to provide her with adequate medication.  To succeed on such a claim, Plaintiff must proffer evidence from which a fair-minded trier of fact reasonably could conclude that Defendants acted with deliberate indifference towards her serious medical needs.  Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003).  This test encompasses an objective and subjective element.

Whether a medical condition is sufficiently serious is an objective test.  Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003).  Whether defendants acted with deliberate indifference to such a need is governed by a subjective test.

Determining whether a deprivation is sufficiently serious requires inquiry into whether the prisoner was deprived of medical care and whether "the inadequacy in medical care is sufficiently serious."  Salahuddin v. Goord, 467 F.3d 263, 280 (2006).  To be sufficiently serious, the condition must present a substantial risk of harm.  It must be a condition of urgency which, if not adequately treated, would produce death, degeneration or extreme pain.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  The Court must consider the risk of harm from such deprivation rather than simply the severity of the pre-existing medical condition.

In this case, Plaintiff's HIV might be considered a sufficiently serious condition which, without proper treatment, would eventually produce serious injury or death.  See Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004); Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003) ("We do not argue with the proposition that HIV is a serious medical condition that requires medical treatment.").  Where, however, "the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim."  Smith, 316 F.3d at 185.

In her brief, Plaintiff explains that "HIV/AIDS is a serious, incurable disease that, left untreated, will lead to death."  Pl.'s Mem. of Law at 8.  This claim appears to be true enough.

Because, however, this is not a failure to treat case, but a delayed treatment case, the focus is on the delay or interruption in treatment; not solely on the fact that Plaintiff is HIV positive. In opposition to Defendants' motions for summary judgment, Plaintiff offers insufficient evidence to show that the two to three month delay in the provision of proper medication presented a substantial risk of harm.  Plaintiff does offer a December 2004 lab report indicating a very high viral load and very low T-cell count.  However, Plaintiff has proffered no evidence from which it reasonably may be inferred that these poor blood test results were the result of not receiving proper medication.  For example, there is insufficient evidence of her blood test results immediately prior to incarceration.  Laboratory results from the early part of 2004 indicate that Plaintiff's viral load significantly increased between May 2004 and August 2004.  Furthermore, there is evidence in the record that Plaintiff had a history of failing to properly take her medications.  In addition, at deposition, Plaintiff admitted that her T-cell count was back to the levels it had been before being at the facility and that her viral load was significantly decreased.  Pierre Dep. at 58.  According to Defendant's expert, which testimony is unrefuted by Plaintiff, "[o]nce a person's blood work numbers return to a preferable range, any risk of harm has passed.  Plaintiff's deposition testimony indicated that her most recent testing showed a CD-4 cell count of 600 and a viral load of 300, which are excellent results and fall within the preferable range."  Berman Aff. at ¶ 17.

        Plaintiff has provided insufficient evidence regarding the specific effects that any delay in treatment had on her medical condition.  Rather, Plaintiff's "proof" consists of little more than vague, conclusory statements that "her health rapidly deteriorated" and "her life was considerably shortened."  Although Plaintiff complained of weakness, diarrhea, skin irritation, and emotional trauma, she has offered insufficient evidence concerning the

seriousness of these conditions or whether they were related to any delay in the provision of medication.  Moreover, while Plaintiff has stated that her treating physicians and various AIDS advocates would be able to testify for her, she was required to gather the relevant evidence now to properly oppose Defendants' motions for summary judgment.  Absent any indication that evidence was not available to her for a justifiable reason, see e.g. Fed. R. Civ. P. 56(f), the failure to supply evidence in opposition to Defendants' motions is inexcusable. For the foregoing reasons, the Court finds that Plaintiff has failed to demonstrate that the two to three month delay in treatment implicated a serious medical need.

Assuming, *arguendo*, that Plaintiff can demonstrate a serious medical need, the Court finds that she has failed to demonstrate a triable issue of fact whether Defendants acted with a deliberate disregard of that serious medical need.  A showing of medical malpractice or negligence is insufficient to support such a claim.  Rather, deliberate indifference generally describes a mental state more blameworthy than negligence.  See Chance v. Armstrong, 143 F.3d 698 (2d Cir. 1998).  There must be evidence that Defendants "actually wished [Plaintiff] harm, or at least, [were] totally unconcerned with her welfare." Hathaway, 37 F.3d at 69.  There must be evidence of a "complete denial of or intentional effort to delay access to medical care, or a reckless and callous indifference to the safety of prisoners."  Hogan v. Russ, 890 F. Supp. 146, 149 (N.D.N.Y. 1995).  The subjective standard for a claim of deliberate indifference to a serious medical need requires a high level of culpability.  This mental state in similar to that recklessness in criminal law.  The actor must be "aware of a substantial risk of harm."  Salahuddin, 467 F.3d at 280.  The belief that a certain course of conduct poses no substantial risk of harm "need not be sound so long as it is sincere."  Id. at 281.

In Estelle v. Gamble, 429 U.S. 97 (1976), for example, the plaintiff was examined by different medical personnel 17 times in less than a year.  Plaintiff's ailment was attributed to an injury to the lower back.  Plaintiff contended that more diagnosis and treatment were necessary.  However, the court explained that a plaintiff cannot prevail on an Eighth Amendment claim simply because he would have liked more options for medical care. Plaintiff may have had a claim for medical malpractice, but not a civil rights violation.  Id.

In this case, Plaintiff proffered insufficient evidence from which a fair-minded trier of fact could reasonably conclude that the doctors and medical staff at the correctional facility acted with a complete disregard for her condition.   In this case, Plaintiff initially failed to inform Defendants of her HIV status.  On October 19, 2004, Plaintiff did inform Defendants of her HIV status.  Although Plaintiff claims that she knew exactly what medications were needed, the evidence indicates that Plaintiff was unable to provide the specific dosages of the various medications that comprised her AIDS cocktail.  Regardless, Defendants needed to confirm her prescriptions before administering medications to her.  Plaintiff was unable to inform Defendants from which specific pharmacy or pharmacies she obtained her medications.[2]  On that same date, October 19, 2004, Plaintiff executed an authorization for the release of medical information which Defendants faxed to the CVS pharmacy at which Plaintiff indicated her prescriptions were filled (Main St., Binghamton, New York and Main St., Johnson City, New York).  CVS immediately responded indicating that Plaintiff had last filled her medications there in July 2004, three months earlier.  Because of the outdated prescription information provided by CVS, Defendants were unable to use this information to

---

[2] There is evidence in the record that Plaintiff obtained prescriptions from various pharmacies in Binghamton, New York; Johnson City, New York; Brooklyn, New York; and Manhattan, New York.

prescribe medication for Plaintiff.  According to Defendants, they "made a medically reasoned decision to not administer HIV medications to Plaintiff based on the out of date information from that particular CVS."  Butt aff. at ¶ 16.  Plaintiff submits no evidence that this decision was medically contraindicated or constituted a disregard for her medical condition.

Shortly thereafter, on October 27, 2004, Dr. Butt again met with Plaintiff.  Butt provided Plaintiff with Dapson for her skin irritation.  Defendants also had Plaintiff complete another release of information authorization to be provided to her primary medical provider in the Binghamton area, Dr. Mariano.  By the time Dr. Butt next saw Plaintiff on December 9, 2004, he had not received any information from Dr. Mariano.  As of December 21, 2004, Plaintiff's blood work revealed a low T-cell count and a high viral load.  Plaintiff again presented to the medical unit on December 23, 2004, at which time she indicated that she may have given the name of the wrong pharmacy and suggested that Defendants contact other pharmacies in the area.  Defendants then sent a request for medical records to Dr. Exhilhomme at the Kings County Hospital.  Defendants also determined to provide Plaintiff with medication notwithstanding the fact that they had been unable to confirm her most current medications.  Accordingly, Plaintiff was prescribed medications designed to treat her condition.  Plaintiff declined to take these medications because she believed it was not the most recent medication cocktail and contained a medication that caused her eyes to turn yellow.  In January 2005, Defendants finally obtained the correct prescriptions for Plaintiff and provided the medications to Plaintiff.  Plaintiff resumed taking the most recent cocktail at that time.  In May of 2005, Plaintiff was transferred to another correctional facility.

Based on these events, a fair-minded trier of fact could only reasonably conclude that Defendants did not act with deliberate indifference to Plaintiff's condition.  Upon learning

of her HIV status, Defendants contacted Plaintiff's doctors, several pharmacies, and the

Kings County Hospital Center to request Plaintiff's medical records.  According to

Defendants, they received little, if any, response to several of their inquiries.  The information

received from the pharmacies was outdated.  During the time they were attempting to confirm

her most recent medications, Defendants provided Plaintiff with over-the-counter pain

medicine, multivitamins, and skin cream.  When, in December 2004, Defendants observed a

drop in her T-cell count, they provided medications based on what little information they had

obtained.  While it can be said that Defendants should have acted more diligently in

obtaining Plaintiff's most current medications and monitoring her condition, it cannot be said

that they acted with deliberate disregard toward her condition.  Plaintiff has provided

insufficient evidence that Defendants' conduct amounted to reckless indifference or blatant

disregard for her health.  Accordingly, the Eighth Amendment claim must be dismissed.

### c.        Fourteenth Amendment

Plaintiff also asserts claims of discrimination under the Fourteenth Amendment.

Specifically, Plaintiff claims that she was discriminated on account of her gender, race, and

religion.  Although there is some evidence in the record that Plaintiff may have generally

complained about being harassed, there is insufficient evidence demonstrating that she

attempted to exhaust the available administrative remedies on her discrimination claims.

Looking to the testimony from the hearing, Plaintiff's deposition testimony, and her responses

to interrogatories, it become clear that Plaintiff never attempted to file the facility's grievance

procedure concerning any discrimination.

Giving Plaintiff the benefit of the doubt and assuming she did attempt to file a

grievance alleging discrimination or that her failure to file a grievance is otherwise excusable,

she fails to identify any Defendant who is alleged to have discriminated against her on account of her gender, race, and/or religion.

Furthermore, the County Defendant moved for summary judgment on the discrimination claims on the ground that Plaintiff has failed to demonstrate a basis for imposing § 1983 liability on the County for any Fourteenth Amendment violations.  Plaintiff failed to respond to this portion of the motion, thereby indicating that she has abandoned that claim.  In any event, the Court finds that Defendant has sustained its burden of demonstrating the absence of a triable issue of fact on this issue.  There is insufficient evidence of any municipal policy, custom, failure to train, failure to supervise, or other evidence upon which a fair minded trier of fact could reasonably conclude that the County Defendant can be held liable for any claimed Fourteenth Amendment violations.  There mere fact that Plaintiff may have been subjected to ridicule or racist comments herself is insufficient to demonstrate a municipal custom or policy or the need for improved training or supervision.  Rather, there must be evidence of "a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials." Bradley v. City of New York, 2007 WL 232945, at * 11 (S.D.N.Y. 2007).  There is no such evidence in the record.

Lastly, Plaintiff offers insufficient evidence demonstrating personal involvement by Defendant Harder.  Thomas v. Ashcroft, 470 F.3d 491, 496-97 (2d Cir. 2006).  There is no evidence that Harder directly participated in any discrimination; learned of any discrimination, but failed to remedy it; created a custom or policy allowing discrimination; was grossly negligent in supervising the corrections officers; or failed to act on information indicating that

unconstitutional acts were occurring.  Id.  Without more, his merely being Sheriff is insufficient to impose personal liability upon him.  Id.

For these reasons, the Fourteenth Amendment claims are dismissed.

d.     **Claims Under HIPAA**

Defendants next move to dismiss the claims under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. No. 104-191, 110 Stat.1936 (1996)(codified primarily in Titles 18, 26 and 42 of the United States Code).  HIPAA does not provide a private cause of action, but merely provides an "enforcement mechanism for the Secretary of Health and Human Services" to enforce the Act.  Means v. Indep. Life & Accident Ins. Co., 963 F. Supp. 1131, 1135 (M.D. La. 1997); see also Acara v. Banks, 470 F.3d 569 (5th Cir. 2006); Barnes v. Glennon, 2006 WL 2811821, at *6 (N.D.N.Y. 2006); Slue v. New York Univ. Medical Center, 409 F. Supp.2d 349, 373 (S.D.N.Y. 2006);  Munoz v. Island Fin. Corp., 364 F. Supp.2d 131 (D.P.R. 2005); Ass'n of Am. Physicans and Surgeons, Inc. v. United States Dep't of Health and Human Servs., 224 F. Supp.2d 1115 (S.D.Tex. 2002).

Having dismissed all federal claims at this early stage of the litigation, the Court declines to exercise supplemental jurisdiction over any state law claims.

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiff's claims under the Eighth and Fourteenth Amendments and for violations of HIPAA are dismissed.  The court declines to exercise supplemental jurisdiction over any remaining state claims pursuant to 28 U.S.C. § 1367(c). The Complaint in this matter is DISMISSED.  The Clerk of the Court shall close the file in this matter.

IT IS SO ORDERED.

Dated:    February 23, 2007

Thomas J. McAvoy
Senior, U.S. District Judge